Laurence M. Rosen, Esq. (SBN 219683)
THE ROSEN LAW FIRM, P.A.
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

*Counsel for Plaintiff*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| OLUTAYO AYENI, Individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>        v.<br><br>SPECTRUM PHARMACEUTICALS, INC., RAJESH C. SHROTRIYA, KURT A. GUSTAFSON, JOSEPH TURGEON, and LEE ALLEN,<br><br>        Defendants. | Case No:<br><br>**CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**<br><br>JURY TRIAL DEMANDED |

Plaintiff Olutayo Ayeni ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the defendants' public documents, conference calls and announcements made by defendants, United States Securities and Exchange Commission ("SEC") filings,

wire and press releases published by and regarding Spectrum Pharmaceuticals, Inc. ("Spectrum" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.     This is a federal securities class action on behalf of a class consisting of all persons other than Defendants who purchased or otherwise acquired Spectrum securities between December 16, 2015 and September 16, 2016, both dates inclusive (the "Class Period"). Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder.

## JURISDICTION AND VENUE

2.     The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and §78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

3.     This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §1331 and §27 of the Exchange Act.

4.     Venue is proper in this District pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1391(b) as Defendants maintain an office in this District and a significant portion of the Defendants' actions, and the subsequent damages, took place within this District.

5.     In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

Class Action Complaint for Violation of the Federal Securities Laws

# PARTIES

6. Plaintiff, as set forth in the accompanying Certification, purchased Spectrum securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosure.

7. Defendant Spectrum is a biotechnology company focused on acquiring, developing, and commercializing drug products, with a primary focus in Hematology and Oncology. Spectrum currently markets six hematology/oncology drugs, and has three drugs in advanced stages of clinical development. Spectrum is a Delaware corporation with offices located at 31355 Oak Crest Drive, Suite 275, Westlake Village, CA 91361. Spectrum common stock is traded on the NASDAQ under the ticker symbol "SPPI".

8. Defendant Rajesh C. Shrotriya ("Shrotriya") has been Spectrum's Chief Executive Officer ("CEO") and Chairman of the Board throughout the Class Period.

9. Defendant Kurt A. Gustafson ("Gustafson") has served as Spectrum's Chief Financial Officer ("CFO") throughout the Class Period.

10. Defendant Joseph Turgeon ("Turgeon") has served as Spectrum's President and Chief Operating Officers throughout the Class Period.

11. Defendant Lee Allen ("Allen") served as Spectrum's Chief Medical Officer from March 2013 to January 2016.

12. Defendants Shrotriya, Gustafson, Turgeon, and Allen are sometimes referred to herein as the "Individual Defendants."

13. Each of the Individual Defendants:

    (a) directly participated in the management of the Company;

    (b) was directly involved in the day-to-day operations of the Company at the highest levels;

    (c) was privy to confidential proprietary information concerning the Company and its business and operations;

Class Action Complaint for Violation of the Federal Securities Laws

(d)     was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

(e)     was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

(f)     was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

(g)     approved or ratified these statements in violation of the federal securities laws.

14.     Spectrum is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

15.     The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to Spectrum under *respondeat superior* and agency principles.

16.     Defendant Spectrum and the Individual Defendants are referred to herein, collectively, as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

17.     The U.S. Food and Drug Administration (the "FDA") is the federal government agency responsible for approval of drugs, including Specturm's products. In order to get a drug approved by the FDA, a New Drug Application ("NDA") must be submitted to the FDA for review.

18.     One of Spectrum's primary products is apaziquone, which is also known as Qapzol and EOquin. Apaziquone is being developed to treat non-muscle invasive bladder cancer.

- 4 -

19.     In 2007, Spectrum began its Phase III Studies: the 611 Study which enrolled 406 patients taking apaziquone and 396 given a placebo; and the 612 Study which has 402 patients taking apaziquone and 411 given a placebo.

20.     On March 13, 2015, the Company conducted a presentation about apaziquone at Spectrum Investors Day. The presentation discussed the current data about apaziquone and touting its promising future.

21.     On May 7, 2015, the Company held a conference call to discuss the first quarter of 2015 earnings. On the call, Defendant Shrotirya discussed apaziquone, stating in relevant part:

> [W]e're making progress in apaziquone, a potent, tumor-activated pro-drug for bladder cancer. ***There is a high unmet need in nonmuscle-invasive bladder cancer, and apaziquone has shown promising data in a previous Phase III program.*** In consultation with the FDA, we are now finalizing a protocol for an additional clinical trial. And soon after initiating the trial, we plan to file an NDA with the FDA before the end of this year.

(Emphasis added).

22.     On the same call, Defendant Shrotirya has the following exchange with an analyst from H.C. Wainwright & Co, LLC:

> **Reni J. Benjamin - H.C. Wainwright & Co, LLC, Research Division**
>
> Got it. Okay. And just switching gears to another program, apaziquone, what does that -- I know you're finalizing the protocol, can you give us any sort of sense as to how that trial is likely to shape up, maybe how big and how long it could take?
>
> **Rajesh C. Shrotriya**
>
> So Ren, you have followed apaziquone for a long time, and so I'll just give you the highlights of the trial. You remember the last trial, the end point of the trial was relapsed rate at 2 years. And when you look at the data of 2 years, we missed significance in each of those 2

Class Action Complaint for Violation of the Federal Securities Laws

studies, which were 500-patient trials. But when you combine the 2 studies, the data was highly significant at p-value 0.017. ***So we took that data, met with the FDA. And our understanding is and our decision is that we can go ahead and file the NDA with this drug, but FDA wanted us to start another trial, take all the learnings from the first 2 trials and incorporate them into the new protocol***. For example, if you -- when we look at our analysis of the earlier trials, we did not see significance at 2 years, but data was highly significant at 18 months, 12 months, 6 months, so one of the major change in the protocol for the next -- for the new trial is that we are looking at time to relapse rather than relapse at 2 years. So that goes in our favor, and there are some other minor tweaks to the protocol. For example, instead of giving it once, we are now proposing to give this drug twice. So those are the 2 major things, and there are other minor considerations. However, I have to tell you that about 80 to 90 centers that participated in this trial, in earlier trials in Canada, in U.S., they're all excited and ready to work with this new protocol.

(Emphasis added).

23. On the same conference call, Defendant Turgeon discussed the future for apaziquone, stating in relevant part:

Also, we plan to file another NDA this year for apaziquone. This is an area of significant unmet medical need and there's been no new product approved in the last 40 years.

24. Further on this conference call, Defendant Allen discussed apaziquone, stating in relevant part:

Finally, let me talk about apaziquone, our tumor-activated pro-drug for the treatment of nonmuscle invasive bladder cancer. At our Analyst Day, you heard how excited a leading urologist, Dr. Fred Witjes, was about apaziquone as potential benefit for patients with this disease who have a significant, unmet medical need. ***The analysis of integrated data from 2 completed clinical trials has demonstrated statistically significant increases in 2 year recurrence rates. We have discussed these data with the FDA and are well on our way with***

- 6 -

Class Action Complaint for Violation of the Federal Securities Laws

*preparing our NDA submission this year.* This submission will be made following the initiation of an additional study as was discussed with the FDA. As Joe mentioned, there's is a dearth of new therapies, and apaziquone has the potential to be the first new drug approved to treat nonmuscle-invasive bladder cancer in more than 40 years.

(Emphasis added).

25.     On August 6, 2015, the Company held a conference call to discuss the earnings of the second quarter of 2015. On the call, Defendant Shrotriya discussed apaziquone, stating in pertinent part:

Lastly, we're on track to file an NDA by the end of this year on Apaziquone, a novel drug for non-muscle-invasive bladder cancer. In addition, a confirmatory trial with Apaziquone is being pursued with the FDA through another special protocol assessment.

26.     On the same call, Defendant Shrotriya has the following exchange with an analyst from Jefferies LLC:

**Chris Howerton**

And then just another quick one on Apaziquone, in terms of the FDA's review of your NDA that you plan to submit towards the end of this year, when will they review that once you have data in hand from the confirmatory trial or they start reviewing the data and potentially provide you with a PDUFA data after acceptance of that NDA?

**Rajesh Shrotriya**

The FDA wants us to do a confirmatory trial. The understanding that we have is that if we're able to submit the old two trials 611, 612, that you combine, as you remember, each study alone is not significant [indiscernible] submitted with those protocols. *However, when you combine those two studies, then the data becomes highly significant. So those two studies combined are going to be treated as one study and FDA wanted us to start another trial for which FDA's input has been sought and is being further solidified by this.*

- 7 -

The understanding is that the FDA – we can file the NDA now, but the FDA will not review it, FDA will send it to DAC, but will not send it until we have included enrolled majority of the patients in the new trial. And the understanding – the FDA said that if we approve your drug now, or review your drug application now, there is no way you can complete a placebo-controlled trial.

Let me remind you the protocol that we're now planning to do is a placebo-controlled study. And therefore to answer your question, until majority of the patients have been enrolled into this trial, the NDA will not be – the ODAC meeting will not be held, I'm sure at the end some review at the FDA will continue.

(Emphasis added).

27.     On the same call, Defendant Turgeon discussed apaziquone, stating in pertinent part:

Also, we plan to file another NDA by the end of the year for Apaziquone, a potent, tumor-activated pro-drug for bladder cancer. This will be our third NDA in three years. In consultation with the FDA, we are pursuing a special protocol assessment for confirmatory clinical trial. Bladder cancer is an area of significant unmet medical need with no new products approved in the last 40 years.

28.     On the same call,  Defendant Allen discussed apaziquone, stating in pertinent part:

Finally, I'll talk about Apaziquone, our tumor-activated pro-drug for the treatment of non-muscle-invasive bladder cancer. As we discussed with you in our March Investor Day meeting, this remains an area with a large unmet medical need. ***Our analysis of the integrated data from the two large completed randomized Phase 3 settings with Apaziquone demonstrated a statistically significant decrease in two-year recurrence rates in patients with early bladder cancer.***

We have discussed these data with the FDA and are well on our way to complete the Apaziquone NDA that will be submitted in the fourth

Class Action Complaint for Violation of the Federal Securities Laws

quarter of this year. This will be the third NDA Spectrum has submitted to the Agency over the past three years.

***The Apaziquone submission will be made following initiation of an additional Phase 3 study that is being discussed with FDA under the special protocol assessment process. Given the lack of new therapies for these patients, Apaziquone has the potential to be the first new drug approved to treat non-muscle-invasive bladder cancer in more than 40 years.***

We continue to be focused on our key priorities in our development program and I'm very confident in our team's ability to execute on our goal and successfully deliver on the value of Spectrum's promising pipeline.

(Emphasis added).

## Materially False and Misleading Statements

29.     On December 16, 2015, the Company filed a Form 8-K with the SEC stating that on December 11, 2015, Spectrum submitted its NDA for apaziquone.

30.     On March 9, 2016, the Company held its conference call to discuss the earnings of the fourth quarter of 2015. On the call, Defendant Shrotriya discussed the NDA for apaziquone, stating in relevant part:

***And then the Phase 3 trials that we did 611/612, we saw the drug was extremely safe. And for the technical reasons we have done reanalysis. We have submitted to the FDA. As you know that we – when we studied, each study was not positive, p-value was not less than 0.05. However, when we combine the two trials then the study data was highly significantly positive.***

In this unmet medical need, no drug has been approved in the space.

(Emphasis added).

- 9 -

31.     On March 14, 2016, the Company filed its annual report for the year ending December 31, 2015 on Form 10-K (the "2015 10-K") with the SEC.   The 2015 10-K was signed by Defendants Shrotriya and Gustafson.

32.     The 2015 10-K discussed the progress of apaziquone, stating in relevant part:

> In December 2015, we submitted our NDA for EOQUIN with the FDA, and in February 2016, the FDA communicated its acceptance of this NDA with a target decision date of December 11, 2016.

33.     On May 5, 2016, the Company held a conference call to discuss the earnings of the second quarter of 2016. On the call, Defendant Shrotriya discussed apaziquone, stating in relevant part:

> As you know, we are expecting an advisory panel and an FDA decision on apaziquone NDA for treating bladder cancer by December 11 of this year.
>
> Overall, you can see why we believe that 2016 is going to be such an exciting year in Spectrum. We are laser focused on advancing these three drugs; SPI-2012, poziotinib and apaziquone. We now market six FDA approved anti-cancer drugs in the United States and the revenue from these drugs helps us to invest in the development and potential expansion of our portfolio targeting larger markets.

34.     On the same call, Defendant Shrotriya had the following exchange with an analyst from Jefferies LLC:

**Chris Howerton**

Hi thanks for taking the questions. I guess just most of my questions were answered in the call and other questions, but in terms of the upcoming expected advisory committee for apaziquone and of course the PDUFA following that. What are your expectations in terms of the sensitivities around the data and your confidence in terms of their being a positive discussion with the committee and regulators?

**Rajesh Shrotriya**

- 10 -

*Well, clearly we are very excited about the data we have submitted to the FDA. It is because of our excitement. It is because we are convinced the drug is safe and effective that we have put together the NDA and we are very pleased that the FDA has accepted it for review and have now given us a PDUFA date. So these are all exiting for us, exciting times for the drug; however, much will depend on the PDUFA date and I have no idea how the PDUFA, I mean the ODAC Panel will.*

One of my concerns has always been that the ODAC Panel consists of oncologists. However, apaziquone is a drug that is to be used by urologists and urologists are the ones who treat bladder cancer. So time will tell. I am hoping that the ODAC Panel will see what we are seeing that the drug is safe and effective and there is unmet medical need. Don't forget in the last 40 years no drug has been approved for nonmuscle invasive bladder cancer. There is definite unmet medical need. So we are being quite excited about the data and about the upcoming ODAC Panel and PDUFA date.

(Emphasis added).

35.    On the same call, Defendant Turgeon discussed apaziquone, stating in relevant part:

Lastly, let me talk about apaziquone, our potent tumor activated drug for bladder cancer. In the first quarter, [t]he FDA accepted our IND filing and provided us with a PDUFA date of December 11, 2016. The FDA also indicated that it plans to hold an advisory committee meeting regarding the NBA [ph].

Our team is already preparing for that advisory committee meeting. Overall the first quarter has been productive and we keep progressing our late stage pipeline. We are focused on developing three drugs that target large indications such as breast cancer and bladder cancer. I am really enthusiastic about our portfolio of late stage drugs. If any of these drugs are successful it could transform spectrum as we know it today. We remain focused on the goals ahead and look forward to updating you on our progress.

Class Action Complaint for Violation of the Federal Securities Laws

36.     On May 6, 2016, the Company filed its Form 10-Q for the first quarter of 2016 ending March 31, 2016 ("1Q16 10-Q") with the SEC. The 1Q16 10-Q was signed by Defendant Gustafson. The 1Q16 10-Q discussed the progress of apaziquone, stating in relevant part:

> In December 2015, we submitted our NDA for APAZIQUONE with the FDA, and in February 2016, the FDA communicated its acceptance of this NDA with a target decision date of December 11, 2016.

37.     On July 13, 2016, the Company published its 2016 Corporate Presentation. In the Presentation included a slide about apaziquone which stated, "Filed NDA with pooled data from previous Phase 3 studies."

38.     On August 9, 2016, the Company filed its Form 10-Q for the second quarter of 2016 ending June 30, 2016 ("2Q16 10-Q") with the SEC. The 2Q16 10-Q was signed by Defendant Gustafson. The 2Q16 10-Q discussed the progress of apaziquone, stating in relevant part:

> <u>QAPZOLA (formerly referred to as APAZIQUONE), a potent tumor-activated drug being investigated for non-muscle invasive bladder cancer:</u> The FDA accepted the NDA and has given Spectrum a PDUFA date of December 11, 2016. The FDA plans to hold an advisory committee meeting regarding the NDA on September 14, 2016. The Company is actively enrolling an additional randomized, placebo-controlled Phase 3 trial under an SPA agreement. The Phase 3 study has been specifically designed to build on learnings from the previous studies, as well as recommendations from the FDA.

39.     On August 9, 2016, the Company held a conference call to discuss the earnings of the second quarter of 2016. On the call, Defendant Shrotriya discussed the progress of the  apaziquone  NDA, stating in pertinent part:

Class Action Complaint for Violation of the Federal Securities Laws

To best of my knowledge and understanding the FDA's decision will be based on the application that we have filed, NDA, rather than on the ongoing study.

40.   The statements referenced in ¶¶ 29-39 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operational and financial results, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) the FDA previously questioned whether the data from the 611 and 612 Studies were clinically meaningful; (2) the FDA advised Defendants in December 2012 not to submit the NDA based on data from the 611 and 612 Studies; and (3) as a result, Defendants' public statements about Spectrum's business, operations and prospects were materially false and misleading at all relevant times.

**The Truth Emerges**

41.   On September 14, 2016, Spectrum issued a press release stating that apaziquone had not shown substantial evidence of treatment versus a placebo, stating in relevant part:

**FDA Advisory Committee Votes that Qapzola™ (apaziquone) Has Not Shown Substantial Evidence of a Treatment Effect Over Placebo**

*The FDA is Expected to Make a Final Decision by PDUFA Date of December 11, 2016*

**HENDERSON, Nev. – September 14, 2016 –** Spectrum Pharmaceuticals (NasdaqGS: SPPI), a biotechnology company with fully integrated commercial and drug development operations with a primary focus in Hematology and Oncology, announced today that *the U.S. Food and Drug Administration (FDA) Oncologic Drugs Advisory Committee (ODAC) voted that Qapzola for immediate intravesical instillation post-transurethral resection of bladder tumors (post-TURBT) has not shown substantial evidence of a*

- 13 -

Class Action Complaint for Violation of the Federal Securities Laws

*treatment effect over placebo in patients with non-muscle invasive bladder cancer (NMIBC).*

The committee recommendation is not binding on the FDA, which makes the final decision on approval. The Prescription Drug User Fee Act (PDUFA) date for the Qapzola NDA is December 11, 2016.

(Emphasis added).

42.     On the same date, the FDA published the FDA's Briefing Document from Oncologic Drugs Advisory Committee Meeting on Spectrum's Qapzola/ apaziquone NDA on its website, which stated that the Company was aware of faulty data it submitted in the NDA back in 2012, stating in relevant part:

*In December 2012, the Agency noted that both 611 and 612 did not meet the pre-specified criteria for superiority when compared to placebo and that the pooled analysis, using data from both studies, was done post-hoc and was not part of the statistical plan. The Agency discouraged the Applicant from submitting a NDA and questioned whether the effect size was clinically meaningful.*

(Emphasis added).

43.     On this news, shares of Spectrum fell $0.45 per share or over 8% from its previous closing price to close at $5.04 per share on September 14, 2016, damaging investors.

44.     On September 16, 2016, *TheStreet.com* published an article entitled "Spectrum Pharma, FDA and the Buried Truth About a Bladder Cancer Drug Meeting" by Adam Feuerstein. The article discussed how Defendants hid a meeting with the FDA, stating in relevant part:

**Spectrum Pharmaceuticals** (**SPPI**) hid from investors a key detail of a meeting with the U.S. Food and Drug Administration in which regulators told the company not to seek approval for a bladder cancer drug because two clinical trials failed to benefit patients.

- 14 -

The FDA's advice was ignored. Spectrum submitted a new drug application for apaziquone as a treatment for bladder cancer. On Wednesday, a panel of outside experts convened by the FDA reviewed the apaziquone clinical data and decided unanimously the drug did not warrant approval.

The FDA will almost certainly follow the panel's recommendation and reject Spectrum's drug.

***The meeting during which FDA told Spectrum not to file a new drug application for apaziquone took place in December 2012***. Federal law prohibits the FDA from disclosing what's discussed at these closed-door meetings. Drug companies are under no such restrictions.

In a perfect world, drug companies provide investors with a fully transparent and accurate summary of FDA meetings. Unfortunately, and all too often, drug companies give investors information about FDA interactions that emphasizes the good and filters out the bad. Investors are kept in the dark about FDA concerns or warnings until it's too late.

Spectrum falls into the latter category.

In May 2015, Spectrum CEO Rajesh Shrotriya was asked by an analyst on a quarterly investor conference call for an update on apaziquone. The company had previously told investors about its intention to seek FDA approval despite two phase III studies failing to achieve their primary endpoints.

"So we took that data, met with the FDA," Shrotriya said in response to the analyst's question. "And our understanding is and our decision is that we can go ahead and file the NDA with this drug, but FDA wanted us to start another trial, take all the learnings from the first two trials and incorporate them into the new protocol."

But that's was not a fully truthful summary of the FDA's guidance to Spectrum.

Class Action Complaint for Violation of the Federal Securities Laws

Here's how FDA recounted its December 2012 meeting with Spectrum, disclosed Wednesday during the apaziquone advisory panel meeting.



## Regulatory History

- Special Protocol Assessment agreement given to study SPI-611 in February 2007.
  - Studies 611 and 612 form the basis of the NDA and are very similar.

- Pre-NDA meeting December 2012
  - Topline results: Each study failed to meet the primary endpoint.
  - We advised NOT to submit the NDA based on this data.

- NDA Submitted December 2015

*__The FDA told Spectrum not to file a new drug application for apaziquone during the December 2012 meeting.__*

Why did Spectrum hide this FDA recommendation from investors?

"I am not aware of all the discussions that happen with the FDA, but I am sure our regulatory department has several ongoing discussions and negotiations with the FDA," Spectrum Vice President for Strategic Planning Shiv Kapoor told me via email Thursday. "Like every company in our sector, we do not disclose every discussion with the FDA."

In March 2015, the Securities and Exchange Commission's top enforcement official, Andrew Ceresney, told a gathering of pharma executives to be more transparent about their dealings with the FDA.

"Accuracy of reporting in your dealings with the FDA is critical to getting investors the information they need," Ceresney said during his speech. He later recounted three cases in which the SEC investigated

Class Action Complaint for Violation of the Federal Securities Laws

and charged drug companies for lying to investors about their interactions with the FDA.

In June 2015, an FDA analysis found that drug companies routinely fail to fully inform the public about their communications with the agency. The FDA analysis, published in the British Medical Journal, concluded that some of the publicly disseminated explanations companies offer for why FDA rejected a drug are misleading or lies.

Spectrum joins an unacceptably long list of drug and biotech companies hurting investors by failing to be fully transparent about their communications with the FDA.

Amgen (AMGN) has refused to tell investors why the FDA rejected its thyroid drug in August. Imclone Systems misled investors for years by not disclosing FDA concerns about the design of studies involving the cancer drug Erbitux. Sarepta Therapeutics, Clovis Oncology, Hemispherx Biopharma, the Genzyme unit of Sanofi, Map Pharma and Introgen Therapeutics have all run into trouble over FDA communication issues.

I'll repeat what I wrote in March 2015 because it's still valid:

The SEC needs to follow through by making it a priority to police drug companies to make sure that disclosures about FDA matters are truthful. More phone calls, more investigations, would serve as a deterrent. Let's empower FDA to be more vocal about regulatory matters, especially when it learns companies are shading the truth. At the very least, the SEC and FDA should establish a clear line of communication to facilitate fact checking.

(Emphasis added).

45.     On this news, shares of Spectrum fell $0.13 per share or over 2.6% over the next two days to close at $4.72 per share on September 19, 2016, damaging investors.

- 17 -

46.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

47.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Spectrum securities traded on the NASDAQ during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

48.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Spectrum securities were actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Spectrum or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

49.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

50.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

Class Action Complaint for Violation of the Federal Securities Laws

51.   Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the financial condition, business, operations, and management of Spectrum;

- whether Defendants' public statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

- whether the Individual Defendants caused Spectrum to issue false and misleading SEC filings and public statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading SEC filings and public statements during the Class Period;

- whether the prices of Spectrum securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

52.   A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

Class Action Complaint for Violation of the Federal Securities Laws

53.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;
- the omissions and misrepresentations were material;
- Spectrum securities are traded in efficient markets;
- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;
- the Company traded on the NASDAQ, and was covered by multiple analysts;
- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and
- Plaintiff and members of the Class purchased and/or sold Spectrum securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

54.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

55.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### Violation of Section 10(b) of The Exchange Act and Rule 10b-5
### Against All Defendants

Class Action Complaint for Violation of the Federal Securities Laws

56.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

57.     This Count is asserted against Spectrum and the Individual Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

58.     During the Class Period, Spectrum and the Individual Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

59.     Spectrum and the Individual Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

- employed devices, schemes and artifices to defraud;
- made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or
- engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of Spectrum securities during the Class Period.

60.     Spectrum and the Individual Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of Spectrum were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These

- 21 -

defendants by virtue of their receipt of information reflecting the true facts of Spectrum, their control over, and/or receipt and/or modification of Spectrum allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning Spectrum, participated in the fraudulent scheme alleged herein.

61.   Individual Defendants, who are the senior officers and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other Spectrum personnel to members of the investing public, including Plaintiff and the Class.

62.   As a result of the foregoing, the market price of Spectrum securities was artificially inflated during the Class Period. In ignorance of the falsity of Spectrum's and the Individual Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of Spectrum securities during the Class Period in purchasing Spectrum securities at prices that were artificially inflated as a result of Spectrum's and the Individual Defendants' false and misleading statements.

63.   Had Plaintiff and the other members of the Class been aware that the market price of Spectrum securities had been artificially and falsely inflated by Spectrum's and the Individual Defendants' misleading statements and by the material adverse information which Spectrum's and the Individual Defendants did not disclose, they would not have purchased Spectrum's securities at the artificially inflated prices that they did, or at all.

64.   As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

Class Action Complaint for Violation of the Federal Securities Laws

65.    By reason of the foregoing, Spectrum and the Individual Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchase of Spectrum securities during the Class Period.

## COUNT II

### Violation of Section 20(a) of The Exchange Act
### Against The Individual Defendants

66.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

67.    During the Class Period, the Individual Defendants participated in the operation and management of Spectrum, and conducted and participated, directly and indirectly, in the conduct of Spectrum's business affairs. Because of their senior positions, they knew the adverse non-public information regarding Spectrum's business practices.

68.    As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Spectrum's financial condition and results of operations, and to correct promptly any public statements issued by Spectrum which had become materially false or misleading.

69.    Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Spectrum disseminated in the marketplace during the Class Period. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Spectrum to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Spectrum within the meaning of Section 20(a) of the

Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Spectrum securities.

70.     Each of the Individual Defendants, therefore, acted as a controlling person of Spectrum. By reason of their senior management positions and/or being directors of Spectrum, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Spectrum to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of Spectrum and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

71.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Spectrum.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.     Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.     Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.     Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Class Action Complaint for Violation of the Federal Securities Laws

Dated: September 21, 2016            Respectfully submitted,

                                     **THE ROSEN LAW FIRM, P.A.**

                                     /s/Laurence M. Rosen
                                     Laurence M. Rosen, Esq. (SBN 219683)
                                     355 S. Grand Avenue, Suite 2450
                                     Los Angeles, CA 90071
                                     Telephone: (213) 785-2610
                                     Facsimile: (213) 226-4684
                                     Email: lrosen@rosenlegal.com

                                     *Counsel for Plaintiff*

Class Action Complaint for Violation of the Federal Securities Laws